UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

TRES HERMANOS DAIRY, LLC,

Case No. 10-14240 T

Debtor.

**<u>MEMORANDUM OPINION ON DEBTOR'S MOTION FOR STAY OF PROCEEDINGS</u>**

The Court confirmed a plan of reorganization in this case on October 19, 2011, doc. 123 ("Confirmation Order").[1] The Confirmation Order contained extensive language agreed to by the Debtor and its main secured creditor, Bank of America ("Bank"), resolving the Bank's objection to the plan. The Debtor now takes the position that the agreed-upon language did not modify the plan.

Taken aback by Debtor's stance, the Bank reopened the case[2] and on September 13, 2013 filed a Motion for Order Interpreting Chapter 11 Plan and Confirming Debtor Default, doc. 145 (the "Interpretation Motion"). Debtor responded to the Interpretation Motion with a flurry of filings, including:

1. Debtor's Response to Bank of America's Motion for Order Reinterpreting Chapter 11 Plan and Confirming Debtor Default, filed October 4, 2013, doc. 151 ("Response");

2. Consent or Refusal to Consent to the Bankruptcy Court Hearing and Determining Claims, filed November 8, 2013, doc. 155;

3. Motion, in the Alternative, to Withdraw the Referance [sic], filed November 8, 2013, doc. 156 ("Withdrawal Motion");

---

[1] Hon. James S. Starzynski, now retired.
[2] The Bank filed a motion to reopen on September 11, 2013 and paid the $167 filing fee. The Court entered a reopening order the next day. Reopening a case is a ministerial act, with no independent legal significance. *See, e.g. In re Woods,* 173 F.3d 770 (10th Cir. 1999), cert. denied, 528 U.S. 878 (1999) (reopening of a case is merely a ministerial or mechanical act that has no independent legal significations and determines nothing with respect to the merits of the case).

4. Motion for Abstention and Lack of Notice, filed November 8, 2013, doc. 157 ("Abstention Motion"); and

5. Motion for Stay of Proceedings While For [sic] Motion for Withdrawal of Reference/Abstention is Pending Decision, filed November 20, 2013, doc. 168 ("Motion to Stay").

By the Motion to Stay the Debtor asks the Court to stay all proceeding on the Interpretation Motion and the Abstention Motion until after the District Court has ruled on the Withdrawal Motion. In an ancillary matter, the Debtor asks for more time to respond to the Interpretation Motion if the Court ultimately denies the Abstention Motion.

The Court has reviewed all filings by either party since the Interpretation Motion was filed, and takes judicial notice of the docket in this case, including a recording of the confirmation hearing, doc. 122.[3] For the reasons set forth below, the Court concludes that the Motion to Stay is not well taken and should be denied, and that the request for more time to respond to the Interpretation Motion should be denied as moot.

## I. BACKGROUND

On September 27, 2011, the Court held a hearing on the confirmation of the Debtor's Plan of Reorganization (the "Plan"). The Bank had objected to the Plan. *See* Objection to Debtor's Chapter 11 Plan, filed September 16, 2011, doc. 114 ("Objection"). At the confirmation hearing, the Debtor and the Bank told the Court they had reached an agreement resolving the Bank's objection. Debtor's counsel represented to the Court that Debtor had agreed to modify its plan to include the language in <u>Exhibit A</u> to the Objection. Debtor's counsel

---

[3] *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade,* 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

stated: "I believe that Ms. Heaphy and I have worked out a form of order and I have it in my hand." *See* Doc. 122 at 1:35-1:40. After explaining a small discrepancy not at issue here, Debtor's counsel stated: "So we do have a proposed form of order but I would like to make sure that we verify that." *Id.* at 4:44 – 4:50. Before the hearing concluded the Bank's counsel stated: "Provided the language that the Bank proposed in its objection in the exhibit were substituted in for the previous language addressing treatment of the Bank that we would be amenable to the Plan and agree to the order that Ms. Behles is proposing." *Id.* at 12:36-12:46.

On October 19, 2011, this Court entered the Confirmation Order. The language in Exhibit A to the Objection is set forth, nearly verbatim, in the Confirmation Order. A Final Decree was entered on April 13, 2012, and the case was closed on that date.

About 18 months later the Bank reopened the case and filed its Interpretation Motion, asking the Court to confirm that the language in the Confirmation Order did in fact represent the Bank's treatment under the Plan. The Debtor filed its Response on October 4, 2013, denying that the Confirmation Order modified the Plan. The Debtor then filed the Withdrawal Motion and Abstention Motion. In these motions Debtor argues that either the District Court or a New Mexico state court should decide whether the Confirmation Order modified the Plan.

## II. DISCUSSION

A. Request for Stay.

With the Motion to Stay, the Debtor asks the Court to stay determination of the Interpretation Motion and the Abstention Motion until after the District Court decides whether to withdraw the reference. In support of this position Debtor cites Fed.R.Bankr.P. 5011(c), which provides:

> The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. §1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge

-3-

may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion. A motion for a stay ordinarily shall be presented first to the bankruptcy judge. A motion for a stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge. Relief granted by the district judge shall be on such terms and conditions as the judge deems proper.

Rule 5011(c) appears to give the Court broad discretion to determine whether to stay a matter pending the District Court's decision whether to withdraw the reference. That is consistent with the inherent power of trial courts to control the disposition of cases pending before them. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *In re Kozeny,* 236 F.3d 615, 620 (10th Cir. 2000).

Many courts examine the propriety of granting a stay under Rule 5011(c) by applying traditional preliminary injunction factors, with the "likelihood of success on the merits" prong directed to the likelihood that the motion for withdrawal of the reference will be granted. *See, e.g., In re City of Detroit, Mich.*, 498 B.R. 776, 780 (Bankr. E.D. Mich. 2013); *In re Beach First Nat. Bancshares, Inc.,* 2011 WL 2441501, *1 (Bankr. D.S.C. 2011); *In re The Antioch Co.*, 435 B.R. 493, 496-97 (Bankr. S.D. Ohio 2010); *In re Eagle Enterprises, Inc.*, 259 B.R. 83, 86 (Bankr. E.D. Pa. 2001).

The other preliminary injunction factors weighed by courts are the harm to the movant if proceedings are not stayed; the harm to the other party if a stay is imposed; and whether the public interest will be served by granting a stay. *See, e.g., In re City of Detroit, Mich.*, 498 B.R. at 780; *In re Beach First National Bancshares Inc.*, 2011 WL 2441501, *1; *In re Summit Global Logistics, Inc.*, 2008 WL 5953690, *2 (Bankr. D.N.J. 2008).

"The manner by which a court considers the factors, the relative weight given to each, and the standards by which a movant is required to prove them, are driven by the special and

-4-

unique circumstances of any given case." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 999 (10th Cir. 2004) *aff'd,* 546 U.S. 418 (2006).

        1.    <u>Likelihood that the Withdrawal Motion Will be Granted</u>.  Tres Hermanos seeks withdrawal of the reference for cause.[4]  Withdrawal Motion, p. 1.  The factors relevant to the District Court's determination of whether to withdraw the reference include: "(1) whether the proceeding is core or non-core; (2) judicial economy; (3) uniformity in bankruptcy administration; (4) economical use of the debtors' and creditors' resources; (5) reduction of forum shopping and confusion; (6) expediting the bankruptcy process; and (7) the presence of a jury demand."  *Samson Res. Co. v. Valero Mktg. and Supply Co.*, 449 B.R. 120, 132 (D.N.M. 2011) (internal quotations omitted).

        a.    <u>Core Proceeding</u>.  A non-exhaustive list of core proceedings is set forth in 28 U.S.C. § 157.  The list includes confirmation of plans.  28 U.S.C. § 157(b)(2)(L).  Core proceedings are "precisely the kind of issue that falls within the expertise of the bankruptcy court, and there is a strong preference for resolving core proceedings in the bankruptcy court."  *In re Wahl*, 2012 WL 5199630, *3 (N.D. Okla. 2012).  More broadly defined, "Core proceedings are proceedings which have no existence outside of bankruptcy."  *In re Houlik*, 481 B.R. 661, 674 (10th Cir. BAP 2012).

    The contested matter commenced by the Interpretation Motion is a core proceeding.  Although the Interpretation Motion does not seek plan confirmation, it is an issue that would have no existence outside of bankruptcy.  Unless the Bankruptcy Code existed there would be no Plan nor Confirmation Order.

---

[4] This is the standard for "permissive" withdrawal of the reference, set out in the first sentence of 28 U.S.C. § 157(d).  The standards for "mandatory" withdrawal of the reference are found in the second sentence of § 157(d).  The Debtor has not argued that the mandatory withdrawal provision applies, and it clearly does not.

-5-

Debtor argues it would be inefficient for the Court to keep the matter because it would have to issue proposed findings of fact and conclusions of law, subject to *de novo* review by the District Court. Motion to Stay, p. 2. That argument fails. Since the matter before the Court is "core," the Court may enter a final order or judgment. 28 U.S.C. ¶ 157(b)(1).

    b. <u>Judicial Economy</u>. Despite Tres Hermanos' arguments to the contrary, judicial economy would be benefited if this Court decided the Interpretation Motion. It is logical for this Court to interpret the Plan and Confirmation Order because the docket and hearing recording are readily available and because it is familiar with the local practice and procedure with confirming plans and/or amending plans with a confirmation order.

Further, it is an essential function of all courts to interpret their own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009) (a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders); *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934) ("That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled . . . These principles apply to proceedings in bankruptcy.").

If the Court interprets the Confirmation Order, it would enable the state court to enforce the Plan according to standard contractual construction, allowing that court to effectively utilize its resources and expertise. On the other hand, failing to do so could lead to spurious litigation or appeals.

    c. <u>Uniformity of Bankruptcy Administration</u>. Uniformity of administration would be furthered if this Court were to interpret the Confirmation Order. It would be disruptive to the reorganization process if a court were to interpret the Confirmation

-6-

Order contrary to the Court's intent when the order was entered. This Court is in the best position to ascertain that intent.

        d.    <u>Conservation of the Parties' Resources</u>. Having this Court interpret the Confirmation Order would also conserve the parties' resources. This Court is familiar with the history of the bankruptcy case, the Plan, and the representations of counsel at the confirmation hearing. It would be a relatively simple matter for the Court to construe the Confirmation Order and determine what affect it had on the Debtor's Plan. Further, this Court is much more familiar with the plan confirmation process than either the District Court or the state court.

The Debtor's position would have been stronger had it filed its Withdrawal Motion as an initial matter, rather than waiting until after filing the Response and appearing at a preliminary hearing on the Interpretation Motion. "A withdrawal motion is deemed timely if it is brought as promptly as possible in light of the developments in the bankruptcy proceedings." *In re Horstmann*, 1997 WL 266759, *23, 85-0186 (Bankr. D.N.M. 1997) (citations omitted). Although the Withdrawal Motion was filed within two months of the filing of the Interpretation Motion, this Court and the parties invested significant resources into this matter during that period.

        e.    <u>Reduction of Forum Shopping</u>. This factor weighs heavily against granting the Withdrawal Motion. It seems clear from the Debtor's actions that it has no desire to argue before this Court that the Confirmation Order did not modify the Plan. Apparently the Debtor hopes that a court with less familiarity with the facts and history of the proceeding might be more likely to conclude that the extensive language in paragraph 7(d) of the Confirmation Order has no meaning or effect.

f. <u>Expediting the Bankruptcy Process</u>. The sixth factor weighs in favor of denying the Withdrawal Motion. A final hearing on the Interpretation Motion is set for December 18, 2013, and the Court should be able to rule on the matter shortly thereafter. This likely would be before the District Court or the state court would rule.

g. <u>Jury Trial</u>. Finally, there is no jury trial demanded by any party, so this factor weighs in the Bank's favor as well.

In sum, all of the factors in the likelihood of success prong weigh in favor of denying the Motion to Stay, because the factors indicate that it is unlikely the District Court would grant the Withdrawal Motion.

2. <u>Balance of Harm</u>. The more a movant can show irreparable injury, the less it must demonstrate likelihood of success on the merits. As the Tenth Circuit stated in *O Centro*:

> In general, '[e]mphasis on the balance of [irreparable harm to plaintiffs and defendants] results in a sliding scale that demands less of a showing of likelihood of success on the merits when the balance of hardships weighs strongly in favor of the plaintiff, and vice versa.' *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 526 (4th Cir.2003). Thus, the more likely a movant is to succeed on the merits, 'the less the balance of irreparable harms need favor the [movant's] position.' *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir.2001). And, alternatively, 'if there is only slight evidence that plaintiff will be injured in the absence of interlocutory relief, the showing that he is likely to prevail on the merits is particularly important.' *Canal Auth. of State of Florida v. Callaway*, 489 F.2d 567, 576–77 (5th Cir.1974).

*O Centro*, 389 F.3d at 1002.

The harm Debtor would suffer by denying the Motion to Stay would be that this Court likely would resolve the Interpretation Motion rather than the District Court. This harm seems neither substantial nor irreparable. The Debtor can appeal any adverse ruling to the District Court. Further, *some* court must deal with the dispute, and the Debtor has articulated no reason why this Court is less able than the District Court to do so. Rather, given this Court's familiarity

with bankruptcy law and procedure and the plan confirmation process, it might be easier for this Court to determine the matter. The Court finds that Debtor has made no showing of harm, irreparable or otherwise, if the Motion to Stay is denied.

On the other hand, the Bank might suffer some harm if the Motion to Stay were granted. Because the Withdrawal Motion likely will be denied, granting the stay likely would have no effect other than delay. Delay would harm the Bank.

Overall, the Court finds that the balance of harms weighs against granting the Motion to Stay.

3. <u>Would Public Interest be Served by a Stay</u>? The Withdrawal Motion implicates the important public policy of respecting the separation of powers enunciated in the Constitution. The Motion to Stay, on the other hand, does not appear to touch significantly on the public interest. To the extent it does, public interest probably weighs in favor of denying the stay request, since granting the request likely would cause delay, and also because it is in the public interest to keep routine, core bankruptcy matters out of the District Court's busy docket.

4. <u>Jurisdiction</u>. In addition to arguing the factors set out above, the Debtor asserts that the reference should be withdrawn because under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this Court "lacks constitutional authority to adjudicate the types of claims asserted against Debtor and others." Withdrawal Motion, p. 1. The argument is meritless. *Stern v. Marshall* held that non-Article III courts may not be able to enter final judgment in cases that existed at common law in 1789. *Id.* at 2609. This is not such a case. However narrowly the Supreme Court may eventually construe the jurisdiction of this Court, it is unlikely to hold that the Court may not confirm a Chapter 11 plan of reorganization, nor to construe its own Confirmation Order.

As shown above, the Interpretation Motion is a core proceeding. Additionally, 11 U.S.C. § 1142 provides: "[T]he debtor . . . shall carry out the plan and shall comply with any orders of the court." Construing this section, the Tenth Circuit stated: "[P]ost-confirmation jurisdiction is appropriate when the matter is 'related-to' the bankruptcy case." *In re CF & I Fabricators of Utah, Inc*., 150 F.3d 1233, 1237 (10th Cir. 1998) (quoting *U.S. Trustee v. Gryphon at Stone Mansion, Inc.*, 216 B.R. 764, 768 (W.D. Pa. 1997)); *see also In re S.N.A. Nut Co.*, 206 B.R. 495, 500 (Bankr. N.D. Ill. 1997) ("Bankruptcy Court jurisdiction over post-confirmation matters is appropriate when adjudication has an impact on the estate or the recovery of the creditors") (citing cases). Further: "Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334." *In re Chateaugay Corp*., 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996) *aff'd in part*, 213 B.R. 633 (S.D.N.Y. 1996) (relying on *Local Loan Co. v. Hunt*, 292 U.S. 234 (1934)). *See also Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) (stating that a Bankruptcy Court plainly has jurisdiction to interpret and enforce its own prior orders).

The Interpretation Motion falls directly within the Court's jurisdiction to specifically interpret or enforce its Confirmation Order in order to carry out the provisions of the Plan. Accordingly, this Court has jurisdiction over this matter.

As Judge Chapman observed in *In re Ambac Fin. Grp., Inc*., 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011), *aff'd*, 2011 WL 6844533 (S.D.N.Y. 2011), *aff'd*, 487 F. App'x 663 (2d Cir. 2012), "Unfortunately, *Stern v. Marshall* has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court." The observation applies here. The Debtor chose the bankruptcy court forum to reorganize and obtained substantial relief through confirmation of a consensual plan of reorganization. Regardless of the nature of the dispute about the meaning of the Confirmation Order, this Court

-10-

Case 10-14240-t11    Doc 170    Filed 11/27/13    Entered 11/27/13 13:50:03 Page 10 of 12

is an appropriate forum to resolve the dispute, and clearly has the jurisdiction to do so. The Debtor's resort to *Stern v. Marshall* is a red herring.

5. <u>Summary</u>. In summary, the Court concludes that the Debtor has not satisfied any of the *City of Detroit* factors relevant to the Motion to Stay.

C. <u>Request for Additional Response Time</u>.

The Debtor also requests additional time to respond to the Interpretation Motion if the Abstention Motion is denied. This request is not well taken because Tres Hermanos has already responded. *See* Response, filed October 4, 2013. The Response was filed 21 days after the Interpretation Motion. Because Debtor has already responded, the request is moot.[5]

### III. CONCLUSION

The Court concludes that the Stay Motion is not well taken and should be denied, and also that Debtor's request for additional time to respond to the Interpretation Motion should be denied. A separate order will be entered.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
Hon. David T. Thuma
United States Bankruptcy Judge

Date entered on docket: November 27, 2013.

---

[5] It should be noted that the local rule Debtor cites in support of its request does not assist Debtor. The local rule, LBR 5011-2, states:

> (3) Contested Matter. In a contested matter, a motion for abstention shall be deemed timely filed if filed within the time allowed for responses or objections to the matter. If a motion for abstention is filed and denied, then the time for filing a response or objection to the contested matter shall be extended until 14 days after the entry of an order denying the motion.

Under this rule, Debtor filed the Response timely and the Abstention Motion late. These facts do not support Debtor's request for more time to supplement the Response.

-11-

Copies to:

Jennie D Behles
P.O. Box 7070
Albuquerque, NM 87194-7070

Robert J Muehlenweg
316 Osuna Rd NE Unit 201
Albuquerque, NM 87107