UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

Tres Hermanos Dairy, LLC,                                    No. 11-10-14240-TR

        Debtor.

## MEMORANDUM OPINION

The Debtor filed this chapter 11 case on August 20, 2010, and filed a Plan of Reorganization on April 29, 2011, doc. 94 (the "Plan"). Bank of America ("Bank") objected to its proposed treatment under the Plan, doc. 114 (the "Plan Objection"). The parties resolved the contested matter by stipulating to the Order Confirming Debtors' [sic] Plan, entered October 19, 2011, doc. 123 (the "Confirmation Order").

In August 2013, it became clear in state court litigation[1] that the parties disputed the effect of the Confirmation Order: The Bank believed the order amended the Plan, while the Debtor disagreed. In September 2013, the Bank filed a motion asking the Court to interpret the Confirmation Order.[2] The Debtor objected to the Interpretation Motion and also filed a separate motion for the Court to abstain.[3] For the reasons set forth below, the Court will grant the Interpretation Motion and deny the Abstention Motion.

---

[1] Case no. D-1314-CV-201000978, pending in the 13th Judicial District, State of New Mexico.
[2] Motion for Order Interpreting Chapter 11 Plan and Confirming Debtor Default, filed September 13, 2013, doc. 145 (the "Interpretation Motion"). The Interpretation Motion asks the Court to both interpret the Plan and declare the Debtor in default under the Plan. The second request has since been withdrawn, so the Court will treat the Interpretation Motion as simply asking the Court to determine the parties' dispute about the meaning and effect of the Confirmation Order, without ruling on whether the Bank and/or the Debtor is in default.
[3] Motion for Abstention and Lack of Notice, filed November 8, 2013, doc. 157 (the "Abstention Motion").

## I.    FACTS

The Court finds the following facts:

1.    The Debtor filed this chapter 11 case on August 20, 2010.

2.    The Bank is Debtor's largest creditor, with a claim of more than $3,000,000, secured by Debtor's assets.

3.    Beginning in June 2011, the Bank and the Debtor negotiated loan repayment terms would resolve the Plan Objection and/or govern how the Bank's claim would be treated post-bankruptcy.

4.    On August 4, 2011, Debtor's counsel sent an e-mail to the Bank's counsel, stating: "spoke with Jim Burke [Judge Starzynski's law clerk]-he says not to touch approved disclosure statement but to () [sic] put this modification which () [sic] only affects the bank in the confirmation order to settle our differences or we will have to go back and renotice disclosure, etc.-so I am proceeding on that basis- and will do up a confirmation order with this in."

5.    The Court[4] held a confirmation hearing on September 27, 2011.[5]    Jericho Sanchez, Michael Layton, Adolph Sanchez, and Kathy Sanchez, all associated with the Debtor, attended the hearing.[6]

6.    At the confirmation hearing, the Debtor represented to the Court that it had resolved the Bank's Plan Objection, that the parties had reached an agreement on the treatment of the Bank's claim, and that the agreement would be memorialized in the confirmation order. Based on the Debtor's representations, the Bank changed its vote on the Plan and told the Court

---

[4] Hon. James Starzynski, who retired August 14, 2012.
[5] The audio transcript of that hearing is doc. 122. Without objection, the Court took judicial notice of that recording.
[6] These individuals also attended the final hearing on the Interpretation Motion and the Abstention Motion.

-2-

that the Plan Objection had been resolved. The conduct of Debtor at the confirmation hearing left no doubt that the treatment of the Bank's claim in the Plan was going to be modified, and that the modified treatment was to be set forth in the confirmation order to be submitted by the parties after the hearing.[7]

7.       Based on the settlement of the Plan Objection and the Debtor's offer of proof, the Court agreed to confirm the Plan.

8.       On October 3, 2011, Debtor's counsel sent an e-mail to the Court, to which a proposed confirmation order was attached (the "Proposed Order"). Counsel for the Bank received a copy of the e-mail.

9.       The Proposed Order provided, in finding paragraph 7(c):

Bank of America Class 3, a-g and Debtor have agreed to settle the obligation based upon the treatment of the Bank claims being modified as shown in Exhibit B.

The Proposed Order also provided, in decretal paragraph J:

The obligation to Bank of America shall be rewritten in accord with the attached Exhibit B.

The attached Exhibit B is identical to the Plan Objection's Exhibit A.[8]

---

[7] At the confirmation hearing Debtor's counsel stated: "I believe that Ms. Heaphy and I have worked out a form of order and I have it in my hand." *See* Doc. 122 at 1:35-1:40. After explaining a small discrepancy not at issue here, Debtor's counsel stated: "So we do have a proposed form of order but I would like to make sure that we verify that." *Id.* at 4:44 – 4:50. Debtor's counsel then stated: "I believe with this change in the confirmation order as shown by Exhibit A to the objection of the Bank of America, Bank of America, who did not vote, will vote yes, as I understand it. And the treatment of the . . . creditors is as provided for in the plan, subject only to this modification, which modifies somewhat the end date of the payment of the Bank of America claim, but I don't think affects in any material way any other creditor . . . ." *Id.* at 8:15-8:49. Before the hearing concluded the Bank's counsel stated: "I will just reiterate . . . the Bank's position that provided the language that the Bank proposed in its objection in the exhibit were substituted in for the previous language addressing treatment of the Bank that we would be amenable to the Plan and agree to the order that Ms. Behles is proposing." *Id.* at 12:36-12:46.
[8]   The only difference between these documents is that the label at the top of the document was changed from "Exhibit 'A'" on the Plan Objection to "Exhibits B" on the Proposed Order.

-3-

10.     On October 3, 2011, the Court suggested to counsel by e-mail that the language regarding treatment of the Bank's claim be moved from Exhibit B into the body of the confirmation order "for the sake of simplicity."

11.     In response to this suggestion, on October 3, 2013, the Bank sent a version of the proposed exhibit in text (.txt) format to the Debtor, "to make it easier to incorporate the new Bank of America treatment into the plan [sic] as requested by Judge Starzynski . . . ."

12.     On October 18, 2013, Debtor's counsel sent the Court by e-mail a revised draft of the confirmation order, which contained the text of former "Exhibit B" in finding paragraph 7(c). The Bank's counsel received a copy of the e-mail. The e-mail to the Court stated "revised per your request."

13.     The same day the Court suggested by e-mail further revisions to the draft confirmation order, none of which are relevant to this dispute. The Court's e-mail was sent to both Debtor's counsel and the Bank's counsel.

14.     On October 19, 2011, the Debtor's counsel sent another e-mail to the Court, with a copy to Bank's counsel, attached to which was a further revised draft of the confirmation order reflecting the additional revisions suggested by the Court. The Court entered this version of the order, the Confirmation Order, on October 19.

15.     The Confirmation Order states in finding paragraph 7(c):

> Bank of America Class 3, a-g and Debtor have agreed to settle the obligation based upon the treatment of the Bank claims being modified as shown below [what follows is the Exhibit B language, subject only to formatting errors caused by poor word processing].

The Confirmation Order also states, in the last sentence of decretal paragraph I, that "The obligation to Bank of America shall be rewritten in accord with the attached Exhibit B." No Exhibit B is attached.

16.     Section 7.3 of the Plan provides that the Court shall retain jurisdiction, inter alia:

> e) To modify the Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Bankruptcy Court, including the Confirmation Order;
> f) To determine all controversies and disputes that arise in connection with the interpretation, enforcement or consummation of this Plan;
> g) To enter such Orders as may be necessary to consummate, implement, and effectuate the Plan and all documents and agreements provided for herein;

17.     The Final Decree, doc. 139 ("Final Decree") provides: "[T]his . . . case is closed subject to the Court retaining jurisdiction to adjudicate only matters for which jurisdiction is retained under the Plan, and the Order Confirming the Plan."[9]

18.     Debtor's counsel acknowledged in a July 10, 2013, letter to the Bank's counsel that the Debtor's post-bankruptcy payment obligations to the Bank were set forth in the Confirmation Order, not the Plan.[10]

19.     On August 16, 2013, however, Debtor's counsel changed her position and asserted in a letter to Bank's counsel that the Confirmation Order did not modify the Plan.

20.     The Debtor and the Bank intended to amend the Plan so the Bank's claim would be treated as proposed in the Plan Objection, and as set forth in finding paragraph 7(c) of the Confirmation Order.

---

[9] The Confirmation Order provides that "until this case is closed, this Court shall retain jurisdiction over this bankruptcy proceeding as provided in Article VII, § 7.3, the Plan. This language, which was superseded by the Final Decree, in any event neither enlarged nor reduced the jurisdiction retained by the Plan and Final Decree.

[10] For example, Debtor's counsel admitted that the "first principal payment is due on July 1, 2012, or thereabouts." This payment is required by the language in the Confirmation Order, not the Plan. Counsel also says that "As far as this interest goes, interest is set forth in the Plan with the notes in classes 3a, 3d, and 3e paid at a variable rate, with the equivalent of the interest of one year Libor, plus three (3)." Again, this is from the Confirmation Order; the interest rate specified in the Plan is a Federal Reserve rate plus 2%. Finally, counsel acknowledges that the interest rate on the fixed rate notes is 5.25% (specified in the Confirmation Order), rather than 6.85% (the Plan).

## II.     THE COURT HAS JURISDICTION.

The Debtor first argues that the Court does not have jurisdiction to rule on the Interpretation Motion.[11] The argument lacks merit, for several reasons. First, it is an essential function of all courts to interpret their own orders. In *Travelers Indemnity Company v. Bailey*, 557 U.S. 137 (2009), the Supreme Court upheld a bankruptcy court's review of an order it issued over twenty years before the review. In so holding, the Supreme Court stated: "[T]he only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order. The answer here is easy . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders." *Id.* at 151. This holding is based on a long line of cases that provide that bankruptcy courts' origins are as courts of equity. The best recitation of this point is from *Local Loan Co. v. Hunt*, 292 U.S. 234, 239-240 (1934), which provides: "That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled . . . These principles apply to proceedings in bankruptcy." The Interpretation Motion seeks a determination from this Court of the meaning and effect of its Confirmation Order. There is no dispute that the Court had jurisdiction to enter the Confirmation Order, so its jurisdiction to construe the order is equally clear.

Second, the Court retained jurisdiction under the under the Plan and Final Decree. The Plan provides that the Court shall retain jurisdiction to interpret the Plan and Confirmation Order, to determine any controversies in connection with the interpretation of the Plan, and to enter any orders necessary to implement the Plan. In turn, the Final Decree provides for

---

[11] *See, e.g*., the Debtor's Motion, in the Alternative to Withdraw the Referance [sic] (Contested Proceding [sic] in U.S.C. 1144), filed November 8, 2013, doc. 156.

continuing jurisdiction as provided in the Plan.  The preservation of the Court's jurisdiction to hear this matter therefore is clear.

Finally, the contested matter commenced by the Interpretation Motion is a core proceeding.  *See In re National Gypsum Co.,* 118 F.3d 1056 (5th Cir. 1997); *In re Allegheny Health, Educ. & Research Found.,* 383 F.3d 169, 176 (3d Cir. 2004) (interpretation of the bankruptcy court's sale order is a core proceeding); *Clark v. Chrysler Group, LLC,* 2010 WL 4486927, at *8 (E.D. Pa. 2010) (same).  A core proceeding is "precisely the kind of issue that falls within the expertise of the bankruptcy court, and there is a strong preference for resolving core proceedings in the bankruptcy court."  *In re Wahl*, 2012 WL 5199630, *3 (N.D. Okla. 2012).

III.     THE COURT WILL NOT ABSTAIN.

The Debtor next argues that the Court, even if it has jurisdiction, should abstain from exercising such jurisdiction under mandatory or permissive abstention.  The argument for mandatory abstention is without merit, and the Court declines to abstain under the permissive abstention option.

A.     <u>Mandatory Abstention Does Not Apply</u>.  Mandatory abstention is addressed in 28 U.S.C. § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action . . . with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

> The elements that must be met for mandatory abstention to apply are:
>
> 1)  the motion for abstention must be timely filed;
> 2)  the matter must be based on a state law claim or cause of action;
> 3)  an action has been commenced in state court;

-7-

4) the action can be timely adjudicated in state court;

5) the claim is within the Court's non-core jurisdiction; and

6) there is no independent source of federal jurisdiction that would have permitted the plaintiff to commence the action in federal court in the absence of the bankruptcy case.

*Hernandez v. Lasalle Bank, N.A. (In re Hernandez)*, 2010 WL 5155011, at \*4 (Bankr. N.M. 2010) (citing *In re Mobile Tool Intern.,* 320 B.R. 552, 556 (Bankr. D. Del. 2005) and *In re Gregory Rock House Ranch, LLC,* 339 B.R. 249, 253 (Bankr. D.N.M. 2006)). While the first, third, and fourth elements are met, the remaining three (second, fifth, and sixth) are not. Mandatory abstention therefore does not apply.

B. <u>Permissive Abstention is Not Appropriate</u>. 28 U.S.C. § 1334(c)(1) governs permissive abstention. It provides in pertinent part:

[N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

As shown by the language of the statute, this permissive abstention is driven in large part by comity principles.[12] *See also In re Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996) (Congress intended to address concerns of comity with the permissive abstention statute); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) (same); *New England Power & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equipment & Marine, Inc.)*, 292 F.3d 61, 69 (1st Cir. 2002) (permissive abstention decision driven by interests of justice, comity, and respect for state law); *In re DPH Holdings Corp.*, 2013 WL 3948683, \*12 (S.D.N.Y. 2013) (emphasizing comity concerns). Issues of comity are not raised here because the Motion

---

[12] Comity means "[t]he principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decision of another, not as a matter of obligation, but out of deference and respect." *Black's Law Dictionary* 267 (6th ed. 1990).

requests that this Court interpret its own order, not the order of the state court. The Court does not believe the state court would be offended in the slightest if the Court were to interpret the Confirmation Order. If the tables were turned and a state court elected to interpret one of its orders that was relevant in a bankruptcy case, this Court would welcome the assistance.

> The factors a court analyzes in determining whether to abstain under § 1334(c)(1) are:
>
> 1) the effect that abstention would have on the efficient administration of bankruptcy estate;
> 2) the extent to which state law issues predominate;
> 3) the difficulty or unsettled nature of applicable state law;
> 4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;
> 5) the federal jurisdictional basis of the proceeding;
> 6) the degree of relatedness of the proceeding to the main bankruptcy case;
> 7) the substance of asserted "core" proceeding;
> 8) the feasibility of severing the state law claims;
> 9) the burden the proceeding places on the bankruptcy court's docket;
> 10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties;
> 11) the existence of a right to jury trial; and
> 12) the presence of nondebtor parties in the proceeding.

*Hernandez*, 2010 WL 5155011, at *4 (citing *Commercial Financial Services, Inc. v. Bartmann (In re Commercial Financial Services, Inc.),* 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000), *reconsideration granted in part,* 225 B.R. 68 (Bankr. N.D. Okla. 2000), and *Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc., (In re Republic Reader's Service, Inc.),* 81 B.R. 422, 428–29 (Bankr. S.D. Tex. 1987)). The fourth, ninth, and twelfth factors weigh in favor of permissive abstention, although the combined weight is slight. First, while there is a state court proceeding (fourth factor), this Court has the benefit of having entered the Confirmation Order. In addition, the Court is familiar with the routine practice of modifying plans of reorganization by agreed-upon language in confirmation orders. The Court believes it would assist the state court if the Court construed the Confirmation Order. Second, the burden placed on this Court by

-9-

the Motion (ninth factor) is not unduly heavy, and is the kind of work the Court is charged to undertake.  Finally, although there are nondebtor parties in the state court proceeding (twelfth factor), all of them but one—Consuelo Layton[13]—appeared at the original confirmation hearing and again at the final hearing on the Interpretation Motion.  Although the nondebtor parties may be affected by this Court's ruling on the Motion, they were present when the original settlement was presented to the Court, are represented by Debtor's counsel in the state court action, and attended the preliminary and final hearings on the Interpretation Motion.

On the other hand the first, second, fifth, sixth, and seventh factors weigh heavily against permissive abstention.  The interpretation of the Plan and Confirmation Order goes to the very heart of this Chapter 11 case (the first, fifth, sixth, and seventh factors), and the Interpretation Motion deals exclusively with bankruptcy issues (the second factor).

The remaining factors are not relevant.

Accordingly, the Court finds that the *Hernandez/Bartmann* factors weigh heavily against permissive abstention.  Because of this and the lack of any other comity or "interest of justice" concerns, the Court will not abstain under 28 U.S.C. § 1334(c)(1).

IV.     THE CONFIRMATION ORDER MODIFIED THE PLAN'S TREATMENT OF THE BANK.

A.     Interpretation of Plans and Confirmation Orders.     Confirmed plans of reorganization are hybrids, part contract and part court order.

> We do not dispute a reorganization plan has some indicia of a contract.  For instance, the interested parties negotiate and draft the document, reach mutual agreement, and consideration is exchanged. Yet, it is also clear a confirmed plan is much more than a contract. For example, once confirmed, a plan is enforceable as a court order against parties who did not even agree to its terms.

---

[13] She is married to Michael Layton, who attended both the confirmation hearing and the final hearing on the Interpretation Motion.

*U.S. Trustee v. CF & I Fabricators of Utah, Inc. (In re CF & I Fabricators of Utah, Inc.)*, 150 F.3d 1233, 1239 (10th Cir. 1998).

When determining the meaning of a chapter 11 plan and confirmation order, the documents are construed together. *In re Dynegy Inc.,* 486 B.R. 585, 590 (Bankr. S.D.N.Y. 2013), citing *Evercore Capital Partners II, L.L.C. v. Davis Trust (In re David Offshore, L.P.),* 644 F.3d 259, 268 (5ᵗʰ Cir. 2011), *cert. denied,* 132 S. Ct. 782 (2011); *In re Heartland Steel, Inc.,* 389 F.3d 741, 744 (7ᵗʰ Cir. 2004) (in determining the meaning of a confirmed plan, the court declined to view the plan and confirmation order as distinct and separate).

In general, plans and confirmation orders are interpreted using contract construction principles. *Heartland Steel,* 389 F.3d at 744-45; *Official Comm. of Unsecured Creditors v. Dow Corning Corp. et al (In re Dow Corning Corp.),* 456 F.3d 668, 676 (6ᵗʰ Cir. 2006); *In re Airadigm Communications, Inc.,* 393 B.R. 647 (Bankr. W.D. Wis. 2008); *Breeden v. Bennett, et al. (In re Bennett Funding Group, Inc.,),* 220 B.R. 743, 758 (Bankr. N.D.N.Y. 1997); *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995) ("An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation").

There is a split of authority whether state or federal common law should be used to interpret plans and confirmation orders. *Compare In re Harvey*, 213 F.3d 318, 321-22 (7th Cir. 2000) (federal common law should apply because of the strong need for uniformity in bankruptcy law), and *Harris v. Allstate Ins. Co.,* 300 F.3d 1183, 1194 (10th Cir. 2002) (in a federal question case federal law governs the applicability of the parol evidence rule), *with Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n,* 997 F.2d 581, 588 (9ᵗʰ Cir. 1993) (uses state law contract construction principles because there is little need for a nationally uniform body of law

-11-

regarding the interpretation of Chapter 11 plans); *In re Standard Beef Co.*, 2011 WL 2014331, *6, (Bankr. D. Conn. 2011) (confirmed plans of reorganization are judgments of the Federal court, but they are construed in accordance with State law). The Court is more persuaded by *Harvey's* rationale of the need for uniformity in bankruptcy law. In the dispute before the Court, however, both bodies of law dictate the same result (as discussed below), so no choice is required.

        B.      <u>The Confirmation Order is Ambiguous</u>. The Confirmation Order is ambiguous on its face. Decretal paragraph I of the Confirmation Order provides "The obligation to Bank of America shall be rewritten in accord with the attached Exhibit B." There is no Exhibit B. This language, confusing in itself, is also arguably inconsistent with finding paragraph 7(c). Thus, under either federal common law[14] or New Mexico law,[15] the Court should consider extrinsic evidence to determine the parties' intent.

---

[14] Under the federal common law the Court must first consider whether there is an ambiguity on the face of the Plan and Confirmation Order. *Smart v. Gillette Co. Long-Term Disability Plan,* 70 F.3d 173, 178 (1st Cir. 1995). If an ambiguity exists, then the Court may consider extrinsic evidence in order to determine the intent of the parties.

> In construing the terms of contracts that are governed by federal common law, we are guided by common-sense canons of contract interpretation. One such canon teaches that contracts containing unambiguous language must be construed according to their plain and natural meaning. Contract language is usually considered ambiguous where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken. . . .
>
> If an inquiring court concludes that an ambiguity exists in a contract, the ultimate resolution of it typically will turn on the parties' intent. Exploring the intent of contracting parties often (but not always) involves marshalling facts extrinsic to the language of the contract documents. When this need arises, these facts, together with the reasonable inferences extractable therefrom, are together superimposed on the ambiguous words to reveal the parties' discerned intent.

*Smart v. Gillette,* 70 F.3d at 178. *See also TLB Equip., LLC v. Quality Car & Truck Leasing, Inc. (In re TLB Equip., LLC)*, 479 B.R. 464, 481 (Bankr. S.D. Ohio 2012) (where a contract provision is subject to two reasonable interpretations, the provision is ambiguous and the court may look to additional evidence that reflects the intent of the parties).

C.     Extrinsic Evidence Makes Clear the Parties Intended the Confirmation Order to Modify the Plan.  Evidence introduced at the final hearing on the Interpretation Motion plainly shows that the Confirmation Order modified the treatment of the Bank's claims set forth in the Plan.  The parties' intent is clearly established by, inter alia, correspondence, the parties' statements at the confirmation hearing, and the original draft confirmation order Debtor's counsel sent to the Court on October 3, 2011.  For example, the October 3, 2011 draft was agreed to by both parties and states in decretal paragraph J that "the obligation to Bank of America shall be rewritten in accord with the Attached Exhibit B."  Exhibit B, in turn, contains the claim treatment language agreed upon by the Debtor and the Bank.

What followed the October 3, 2011 e-mail from Debtor's counsel was a well-intentioned but poorly executed attempt to incorporate the Exhibit B language into the order itself, rather than have the language in an exhibit.  Instead of making the final order simpler, the attempt created an ambiguous document.  The ambiguity should have been noticed and corrected by the Court, Debtor's counsel, and/or the Bank's counsel, but was not.  Nevertheless, there is no doubt what was agreed upon and intended.

In her July 10, 2012, letter to the Bank's counsel, Debtor's counsel acknowledged that the Confirmation Order, not the Plan, governed treatment of the Bank's claim.  For reasons never satisfactorily explained, Debtor's counsel changed her position about a month later, as reflected in her August 16, 2013, letter.  Such change of position in the face of abundant evidence of the parties' contrary intent is regrettable.

---

[15] New Mexico courts have a more lenient standard than the federal common law in permitting the use of extrinsic evidence.  New Mexico has abandoned the four-corners standard and instead holds "that in determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 242-43 (N.M. 1991).

D.    Judicial Estoppel.    The principles of judicial estoppel also dictate that the Debtor's position cannot prevail.  The purpose of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment .... [and] to prevent improper use of judicial machinery."  *Queen v. TA Operating, LLC*, 2013 WL 4419322, at \*4 (10th Cir. 2013) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749-50 (2001)).  Thus, "judicial estoppel is an equitable doctrine invoked by a court at its discretion." *Id.*

Because judicial estoppel concerns the integrity of the judicial system, independent of the interests of the parties, it may be raised by the Court *sua sponte*.  *In re Airadigm Communications, Inc.,* 616 F.3d 642, 661 (7th Cir. 2010), *citing Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524, 530 (5th Cir. 2000); *Casanova v. Pre Solutions, Inc.,* 228 Fed. Appx. 837, 841 (11th Cir. 2007); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.,* 337 F.3d 314 (3d Cir. 2003), *cert. denied*, 541 U.S. 1043 (2004).

Three factors "typically inform the decision whether to apply the doctrine [of judicial estoppel] in a particular case."  *Queen v. TA Operating,* 2013 WL 4419322, at \*4  These factors are: (1) a party's subsequent position must be clearly inconsistent with its former position; (2) a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled; and (3) the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.  *Id., citing Eastman v. Union Pac. R. Co.,* 493 F.3d 1151, 1156 (10th Cir. 2007).

-14-

Here, the Debtor and the Bank informed the Court at the confirmation hearing that the Bank's objection to confirmation of the Plan had been resolved by agreed-upon language that would be included in the Confirmation Order, which language would modify the Plan. The position Debtor now takes is inconsistent with that representation and stipulation. If the Debtor succeeded in its argument that the Plan was *not* modified by the Confirmation Order, the Court and the Bank would have been misled at the confirmation hearing, to the Debtor's advantage. Debtor therefor is judicially estopped from arguing that the language in paragraph 7(c) of the Confirmation Order did not modify the Bank's treatment under the Plan.[16]

## V.     OTHER MATTERS.

A.     <u>The Bank is Not Seeking to Revoke or Modify the Plan</u>. The Debtor argues that the Interpretation Motion is a *sub rosa* attempt to revoke or modify the confirmed Plan, and should not be allowed without the notice and disclosures required by 11 U.S.C. § 1127(c). The argument has no merit. The Interpretation Motion does not seek, directly or indirectly, to modify the Plan, but only asks the Court to interpret the Confirmation Order and Plan in view of the Debtor's recent change of position. The requirements of 11 U.S.C. § 1127(c) therefore are not implicated.

---

[16] The same result is achieved by reviewing the facts in light of the strong policy of enforcing stipulations made in open court. *Nisselson v. Empyrean Investment Fund, L.P. (In re MarketXT Holdings Corp.)*, 336 B.R. 39, 58-59 (Bankr. S.D.N.Y. 2006), has a good discussion of the policy:

> A stipulation of settlement on the record in court remains one of the strongest and most binding agreements in the field of the law. An agreement made on the record, in open court, and under the eyes of the Court is a most solemn undertaking requiring the lawyers and the parties to make every reasonable effort to carry out all the terms to a successful conclusion. Courts favor stipulations because strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process. Accordingly, parties are bound to the terms of their agreement made on the record. This means that parties are bound to agreements entered into on the record in open court by an attorney who has actual or apparent authority to so act.

-15-

B.     The Debtor's Argument About Interest Rate Will Not Be Considered.  At the final

hearing the Debtor asserted that the interest rate it agreed to for its fixed-rate obligations to the

Bank was 5%, not the 5.25% stated in the Confirmation Order.  The issue was not raised before

the final hearing, so the Court will not consider it.  Further, under the parol evidence rule the

Debtor is barred from attempting to vary the clear terms of the Confirmation Order.  *See Harris*

*v. Allstate Ins. Co.*, 300 F.3d 1183, 1194 (10th Cir. 2002) (federal common law); *Sanders v.*

*FedEx Ground Package Sys., Inc.*, 188 P.3d 1200, 1207 (N.M. 2008); *City of Sunland Park v.*

*Harris News, Inc.*, 124 P.3d 566, 572 (N.M. App. 2005) (state law).  The time to raise this issue

was at the Plan confirmation hearing.  It is too late for the Debtor to argue that the agreed-upon

fixed interest rate is not the rate in the Confirmation Order submitted for entry by Debtor's

counsel.

C.     The Debtor's Estoppel Argument Will Not Be Considered.  In its supporting brief

and at the final hearing, the Debtor argued that the Bank is estopped from enforcing the

Plan/Confirmation Order because it had not provided statements of the amounts due under the

loans at issue.  The Court will not consider this argument, since it goes to whether the Debtor is

in default under the Plan.  The matter before the Court is the proper interpretation of the Plan and

Confirmation Order, not whether the Debtor is in default.  The issue is better left to the state

court to take up when it rules on the Bank's assertion that the Debtor is in default.

## VI.     CONCLUSION

The Court has jurisdiction to decide this core proceeding under its inherent authority and

the authority provided in the Plan and Final Decree.  Because this matter goes to the heart of the

Chapter 11 process, abstention is neither required nor indicated.

Interpretation of the ambiguous Confirmation Order is easy from the evidence presented by the parties at the final hearing — the language in finding paragraph 7(c) of the Confirmation Order was intended to, and did, modify the treatment of the Bank under the Plan. Furthermore, the Debtor is judicially estopped from arguing to the contrary.

Separate orders consistent with this Memorandum Opinion will be entered.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered on docket: January 16, 2014.

Copies to:

Jennie D. Behles
P.O. Box 7070
Albuquerque, NM 87194

Robert J. Muehlenweg
316 Osuna Road, NE, #201
Albuquerque, NM 87107

Leonard Martinez-Metzgar
P.O. Box 608
Albuquerque, NM 87103

-17-